. Yeah. Stand, please. Oye, oye, oye, all persons having business before the Honorable, the United States Court of Appeals for the District of Columbia Circuit are admonished to draw near and give their attention, for the court is now sitting. God save the United States and its Honorable Court. Be seated, please. Case number 17-3034, United States of America v. Lonell G. Glover, appellant. Ms. Biederman for the appellant, Mr. Hansford for the appellee. Good morning, Judges Rodgers, Wilkins, and Sentel. May it please the Court, I'm Donna Biederman, and I'm here on behalf today of Mr. Lonell Glover. I cannot imagine how Mr. Glover could have been any clearer than he was during the plea colloquy. I count at least five times that he told the court that he did not understand the rights he was giving up. He never said he understood them at all. Over and over, he told the court that he didn't understand what he was waiving. He told the court that he didn't understand what he was waiving. So why did your client then respond that he understood when the district court periodically asked him, do you understand, do you have any further questions, your client said no. My client never said he understood, and he did indicate after his attorney said that he understood that he still had questions that he still did not understand. Not at one point did he say that he understood the rights he was giving up. He did not. So this Court should ignore his answers to the district court's questions? No. He never said that he understood the appellate rights he was giving up.  He always said he was confused. His attorney said that he understood them. At one point, the judge, the district judge said to him a whole litany of things, and at the end. Maybe you didn't hear what I said in my first question. When the district court asked your client as to what he was waiving as to the right to appeal, and the district court went over it with him, and he said, is that correct? Do you have anything further? Your client said no. Then the district court went on further and said subsequently, after this colloquy to which you're referring, and your client said no in response to the district court's question, did he have any further questions? His response to did he have any further questions were my only questions concerned the appellate waiver. So would you agree that what your client was concerned with principally before the district court was the scope of his waiver of the right to appeal? Yes, that's what his major. And specifically about the sentence and a claim of ineffective assistance of counsel? The sentence, the assistance of counsel in addition to the scope of the rights that he was waiving, yes. Those were his concerns, and he said. What other scope of rights that he was waiving did he ever raise any question about? He questioned, he said multiple times that he didn't understand which rights he was giving up on appeal. So the scope of the rights that he was concerned about was everything that he would be giving up on appeal. There were multiple questions and multiple times, at least five times, that he said he didn't understand the scope of the appellate rights that he was giving up. So that's what he was mostly concerned about. Although he did raise these other questions, the questions of ineffective assistance of counsel. What about pages 30 and 31 of the plea transcript where had the government's request before the court concluded the proceeding, the court asked some additional questions about the appeal waiver. The court. And Mr. Glover was asked specifically on page 31, do you understand that in the transcript says that the defendant said yes? Yes. That yes came at the end of a long list of questions or a long list of statements that the court was telling him, and the very last part is what he said yes to, which doesn't mean that he understood the rights that he was giving up. The court went on to a long thing, did not ask him if he understood the entire thing. He said at the end, I don't recall the exact question. But we're supposed to say that there was, this was an improper compound question. Yeah. In that the response of yes, we don't know what the response was to what part of that compound question, as opposed to saying that he was responding yes to every single part of the compound question. That's correct. The, Mr. Glover had an 11th grade education. And if I, when I'm reading the transcript, I'm thinking that some of it was kind of confusing. And he had an 11th grade education, but he's been through the court system more than most lawyers have. Well, he had been through the court system more than once. That is true. But that doesn't mean that he can understand the proceedings in the same sort of a way. He's done pretty well in the pro se's and such, hasn't he? Did he file a lot of pro se motions? He did file a lot of pro se motions. I would not say that they were all that understandable. And I would say that they were ambiguous. And I would say that, based on his background and his level of education, that it was a confusing question. What is it today that he didn't mean to waive in district court, exactly what right do you say he was deprived of? Whether he could appeal, and whether he could appeal generally, and whether he could appeal the sentence. And the- Stop. But then we get to your reply brief, where you state, quote, the fact that Mr. Glover understood that he did not give up rights in these two areas does not mean he understood the rights he was waiving. And the reference in your reply brief, at three to four, is to the right of appeal of his sentence and a claim of ineffective assistance of counsel, which, from the transcript that I read that Judge Wilkins referenced, were the two things that your client raised with the district court. Well, I think he raised more than that. I think he raised the fact that he was confused and concerned about all of the appellate rights that he was waiving. And I think that he was confused generally. And he never said that he wasn't. The whole time, he kept trying to tell the court that he didn't understand what was going on. I think that the transcript reads like a bunch of lawyers and a judge who are trying to get through it, because there is a difficult defendant in front of them, and not trying to assuage his concerns and make sure that he gets all the rights that he is supposed to be getting. So, just so that I'm clear, your brief says that the relief that you're requesting is remanding for further proceedings. Does your client want to vacate this guilty plea and go to trial at this point? He does. Okay. Wasn't he offered that option in the, I couldn't tell you the page of the transcript, but did Judge Hogan say, we can start this trial Wednesday if you want to withdraw your plea? The judge did say to him, we can start this trial and you can get a sentence of life imprisonment with no chance of parole, which at one point during there. I'm sorry? That was true, was it not? That was one of the possibilities. I don't think it was a necessary way to state it to somebody. You don't think he should have been warned of that? He knew what the chance was, what the sentence was. He knew it then and he didn't take the trial then. Why should we let him come in now and wipe up the slate and start the trial? Because he thought he could take the deal, take the plea, and then still be able to appeal. He is appealing right now. Yes. Partly. What was he not able to appeal that he thought that he could appeal? He is able to appeal right now on the ineffective assistance of counsel, which we have in our brief, and he's able to appeal right now whether the sentence was illegal. In fact, in most circuits, wouldn't that be raised in a habeas step proceeding, 2255, rather than in direct appeal? That's correct. We didn't need that. But anyhow, he's appealing now. What is it he wanted to appeal that he didn't get to appeal? The fact that he took this plea. He didn't understand what rights he was giving up when he took this plea, and he didn't understand that he wouldn't be able to appeal the plea. So let me ask you, you rely heavily on our decision in U.S. v. Golan. That's the way we pronounce it. How have you made a colorable claim of ineffective assistance of counsel? Because anyone who goes to a plea and who stands there and says, I don't understand this, I don't understand this, I don't understand this, is that's ineffective assistance of counsel if his counsel is then not explaining it to him properly so he can understand it, so he knows what rights he's giving up. And his counsel just tried to get him through that plea process without, again, without explaining what those rights that he was giving up were. So that's ineffective assistance of counsel. If your burden is on appeal when you raise on behalf of your client a claim of ineffective assistance of trial counsel, can you just say it and that's all? The burden is whether counsel is acting as counsel under the Strickland standard and whether he was afforded assistance of counsel, and he was not. So you think that's what Golan meant by a colorable claim? Yes. He was just raising it. No, not just raising it, but having some proof on it, and which he did, but based on his statements at the hearing. Are there no further questions? Well, let me just follow up on that. His counsel stated on the record, presumably not under oath, but still as an officer of the court, that he had explained things to his client and that at least his attorney thought his client understood what he was giving up by entering this plea. So with that record, my question is, what is your colorable claim? And your response to me is, my client kept saying he didn't understand. Yes, because it's not the attorney's understanding, it's my client's understanding. Your colorable claim, all right, and the district court went on at some length with your client about what he didn't understand. His attorney told the district court he had reviewed this with his client and the attorney thought he understood what rights he was waiving. Correct. So if we remand this to the trial court, what's going to happen? I don't believe it's the attorney's right to say that his client understood. I think it's the defendant's right to say whether he understands what he's waiving. Of course, but if the attorney tells the district court, I have reviewed this with my client and that at least in my opinion as his attorney, I think my client understands. On appeal, do you have any burden to say anything that would indicate that that statement as an officer of the court is not credible and therefore you have raised a colorable claim? Not that the attorney's statement is not colorable. It's not credible. Not credible, I apologize. It's that my client was clearly confused and clearly didn't understand and I think we've raised enough of a question as to his understanding. Thank you. Let's hear from counsel for the government. Good morning, Your Honor. May it please the Court. Eric Hansford for the United States. As to whether the defendant understood his sentence appeal rights, which were the only rights that he expressed any confusion about during the plea proceeding, this was the precise exchange with the district court. It was not a claim. Well, you heard counsel this morning and we went over that and counsel basically rejects that view of the record. What's your response? So I think the plea, the record is clear that on pages 30 to 31 of the transcript the question is you understand you do have some appeal rights. You didn't waive everything. You understand that. I talked about you can appeal the illegal sentence, ineffective assistance of counsel. You still have those rights. The defendant replies, right. That's not an improper compound question that's explaining just the sentence appeal right. And the defendant never suggested below that there was an improper compound question. It also bears mentioning that the sentence appeal right, the defendant has no conceivable interest in appealing his sentence here. This was a Rule 11 C1c plea. He bargained for a fixed term of 21 years of imprisonment. Had the judge given any other sentence, he would have had a right to withdraw from the plea. And he received the 21-year sentence. So the defendant's interest in appealing that sentence, he has no interest in that. It's also the sentence appeal waiver does not go to the validity of the plea. That if a defendant does not understand a sentence appeal waiver, this Court has left pleas in place and allowed a defendant to appeal his sentence. So in other words, if the defendant did not understand his sentence appeal waiver, it would just be severed, and he would be allowed to pursue an appeal of his sentence. As to his misunderstanding of ---- We said that that's the only remedy, or has that just been a remedy that we have employed? This Court has not said it's the only remedy. It is just a remedy that this Court has employed. The 11th Circuit, 1st Circuit, and 2nd Circuit, in cases we cite in the brief, has applied that remedy. And I think it's also a remedy that makes sense because a defendant can, as part of a plea, retain the right to appeal a sentence or waive that right. So it is separate from whether or not a defendant is pleading guilty. It's not like the right to confrontation or self-incrimination or trial by jury that inherently in pleading guilty a defendant is waiving. So it does make sense to sever that. It seems that the defendant here is essentially making an argument that when you combine the confusion over the appeal rights with the fact that the defendant said that he was not satisfied with his counsel and had never been satisfied with his counsel, and when you combine that with the fact that the counsel would not file motions on his behalf, and when you combine that with the fact that the district court said you will get a sentence of life imprisonment without parole if you are convicted at trial, instead of saying that that may happen, that may occur, that when you combine all of those together, that this is, this was an involuntary plea. What's your response to that? So I think I'll go through those one by one. First, as to the defendant's claim that he's confused about his appeal rights more generally, I don't think the record shows that. It really is focused on the sentence appeal rights. He's also giving up his right to appeal a conviction after trial as part of the plea. It's the other appellate right that someone gives up as part of a plea. The defendant expressed no confusion about that. It really is focused on the sentence appeal rights here. And Judge Hogan did go over that with the defendant at the end of the plea proceeding. As to defendant saying he was unsatisfied with counsel, he can raise ineffectiveness claims. He did retain that right under the plea. But Judge Hogan said, look, you've had 11, I think Judge Hogan said 9, but the record shows defendants had 11 different counsel during the course of his plea, or his case. And Judge Hogan said he'd appointed more counsel for defendant than any other defendant in his time on the bench. So whether in the typical case, a defendant's unhappiness with counsel should give a court pause, I think in this case, Judge Hogan had good reason to accept that defendant was, in defense counsel's terms, chronically dissatisfied with counsel. And that can happen. Doesn't the district court have an obligation if a defendant says during a plea Well, Judge Hogan did inquire further. He asked, why are you dissatisfied with counsel? Defendant told him because counsel had not filed this motion to dismiss the indictment based on the truck bug evidence. Judge Hogan then turned to counsel and said, why haven't you filed that motion? It failed to move for the minutes of the grand jury based on the truck bug. That's right. And based on what defendant was saying, it seemed to be setting up a motion to dismiss the indictment based on the truck bug evidence. So he never said that specifically. But when Judge Hogan asked counsel why he hadn't filed that motion, counsel said he'd considered filing it, and they'd filed every motion that they thought was otherwise or ethically appropriate. So in other words, counsel was saying this was a frivolous motion, which indeed it was a frivolous motion under the Supreme Court. Have you ever seen a defense counsel file a motion for the grand jury minutes? I have not seen that motion. And I think here I filed one when I was a public defendant. But I think here We have a case pending. I think here what the defendant was trying to set up in terms of a motion to dismiss the indictment is foreclosed by Supreme Court precedent and this Court's precedent, which has said improper evidence going before a grand jury in violation of the Wire Top Act does not give a right to dismiss the indictment. And it's become A failure of evidence before the grand jury is subsumed when there's been a trial and a guilty verdict, or presumably when there's been a guilty plea. That's right, Your Honor. And it's become even more frivolous since then, given the Supreme Court's recent decision in Dada, which overrules this Court's decision in Glover 1, makes clear that the truck bug evidence here actually was proper evidence, should not have been suppressed. And so appellant would plainly fail to show prejudice in counsel failing to file that motion. But under this Court's decision in Pollard, defendant's dissatisfaction with his attorney does not render a plea legally involuntary. Pollard says the only things that can render a plea legally involuntary are force, threats, misrepresentation, or improper promises like bribery. This is none of those. So following up on Judge Wolken's question, when Mr. Glover said he felt coerced, the district court explained, well, that's not exactly what he was referring to and went on to talk about physical threats and the like. But did the district court have any obligation to examine what Mr. Glover meant when he said he was coerced? Well, I think Judge Hogan understood, and appellant is clear on appeal, that what he meant by feeling coerced is feeling forced to plead guilty based on the failure to file that motion. Appellant, on page 6 of his reply brief, makes clear that that was the claim of coercion, which is what Judge Hogan understood. So Judge Hogan had already inquired into that. Just on the last part of Judge Wolken's question about Judge Hogan saying that the defendant was facing life without parole if he went to trial, this is a case where the defendant had already gone to trial before Judge Hogan. That is the sentence he received. Based on the guidelines calculations in the plea, that's also what his guideline sentence would have been had he not gotten the acceptance of responsibility points here. The guidelines range would have provided for life without parole, but of course under Booker, district judge didn't have to give him that, right? That's right. And I don't think Judge Hogan said you will definitely get life without parole if you go to trial. I think what he said— Didn't use the words definitely, but he said you will, right? I guess what I'm seeing is on page 9 of the transcript, the guilty plea gives you an opportunity to serve a shorter period of time certainly than life without parole if you're going to accept it. I'm not going to force you to accept any guilty plea if you don't want to. And I think the trial court actually has an obligation to make sure that the defendant understands the consequences both of accepting a guilty plea and of not accepting a guilty plea. So if the defendant does not realize that he's facing a sentence, a likely sentence of life without parole if convicted, I think that could—that would also be a problem here. And so Judge Hogan— So at one point, the district court said, but we're here today to talk about the guilty plea to resolve the charges against you so you don't go to trial and if you're convicted, you would get a sentence of life without parole. That's at 78, 79 of the appendix. I don't think that—I mean, I think in the full context, Judge Hogan was not saying that he would definitely be getting a sentence of life without parole if he did not plead guilty, but I do think that was going to be a likely consequence of the defendant pleading guilty in this case. But I don't read Judge Hogan as saying— He said you would get a sentence. What's unclear about that? Well, I think just after that, that's where he says the guilty plea gives you an opportunity to serve a shorter period of time certainly than life without parole. So I think it's clear in context he's saying this is the likely sentence that you are facing, not the sentence you will definitely face. But I do think that was the defendant's likely sentence that he was facing here. It's also the defendant had already said that he wanted to enter this plea. He'd already indicated that he did want to do that, and so the idea that this was somehow influencing his decision I don't think can be squared with the record here. If the Court were to conclude that the coercion was in respect to the point you've been exploring with Judge Wilkins, would a remand be appropriate? I don't think that a remand would be appropriate. First— Would setting aside the plea be appropriate? Yeah. I think if the Court were to conclude that he had been coerced into pleading guilty based on a threat, that he would be, yes, I think that would— A promise that if you go to trial, you're getting life without parole. I do think that would be probably the appropriate remedy here. I do want to note the defendant does not make the argument that he felt coerced into pleading guilty by that statement by Judge Hogan. And I do think Judge Hogan's statement is not a threat. What Brady recognizes is that a threat of exercising your rights to go to trial, a threat to give a higher sentence based on that, can create coercion. But that just giving factual information about the case is not going to create coercion. And indeed, appellant's counsel should have been telling him that he was likely facing a sentence of life without parole if he did go to trial in this case. Before the oral arguments this morning, have you understood the defendant to be asking to withdraw the plea and go to trial? I think it was unclear exactly what the defendant was asking for. Okay. I do think we should put on the record that the defendant is incurring or taking on a pretty significant litigation risk in asking to set aside the plea given the Supreme Court's recent Dada decision, which makes clear that the truck bug evidence actually is admissible. So in other words, the record at a retrial could well be the same record that he was convicted on the first time. He was given a plea in a world where the government understood this truck bug evidence was not admissible. Now under Supreme Court precedent, it's plain that that truck bug evidence would be admissible. If there are no further questions, we'd ask this Court to affirm. Thank you. Thank you. Counsel for appellant. I agree that Mr. Glover is taking on a significant risk with this appeal, but it's his risk to take on. It's not mine to take on. It's not the government's to take on. It's not the government's to say that he shouldn't take it on. Did he, in fact, before today ever make it clear that what he wanted was to strike the plea and go to trial? Absolutely. When did he do that? I didn't read the relief freight in your brief as being that clear as to what it was he wanted. When did it remand him to further proceedings? Well, I thought that it was clear throughout the brief because that's what we've been arguing for, and that would be what it was under several of these points. He actually offered that at the plea hearing. I mean, the judge said we can just not take the plea and go to trial next Wednesday. He did, but he also followed that up with threatening him with a life without parole. And I will say that although the government said we did not argue it in our brief, on page 20 of our brief, we did say the Court seemed to threaten Mr. Glover with a life imprisonment if he did not, not only not allaying Mr. Glover's feelings but also further forcing him to make a decision that he seemed ill-prepared to accept. So we did argue that. Is it really a threat when he's already done it? He's already weighed all of the 3553A factors and the guidelines and everything else and the guidelines. And gone through a trial and been sentenced to life without parole and then had it overturned. It is still a threat because he did say, as Your Honor mentioned, that he would be sentenced to this rather than he could be sentenced to this. Or this is usually in these types of proceedings, this is the most that the law allows and that is not what was said to him. It was said to him, you can either take this plea or you can be sentenced to life without parole. My client believes he can go to trial and be vindicated and get nothing. Well, I mean, that goes without saying. I mean, the judge doesn't have to do nothing in Rule 11 or in arduous prudence says that the judge has to reiterate that. I mean, that goes without saying. I guess my point here is that, is it appropriate to say, to construe what the district court said here is a threat when the district court was merely . . .
judges: Rogers, Wilkins, Sentelle